## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BREEZE SMOKE LLC, | |
| Plaintiff, | CASE NO. |
| vs. | |
| WORLD WHOLESALE INC., LIGHT VIEW LLC, and VICA TRADING INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Breeze Smoke LLC ("Breeze Smoke"), by its undersigned attorneys Honigman LLP, for its Complaint against Defendants World Wholesale Inc., Light View LLC, and VICA Trading Inc., (collectively, referred to herein as "Defendants") alleges as follows:

## NATURE OF THE CASE

1.      This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1051, *et seq.*, as well as related state and common law claims, in which Breeze Smoke is seeking immediate injunctive relief and monetary damages for Defendants' willful infringement of Breeze Smoke's BREEZE trademarks. Specifically, Defendants are retailers, wholesalers, and

distributors who intentionally display, market, advertise, promote, distribute, offer to sell, and sell electronic vaping devices to consumers in Michigan and elsewhere. Defendants are infringing Breeze Smoke's rights in its BREEZE trademarks by using those marks to mislead consumers into believing there exists some affiliation, sponsorship, or connection between Breeze Smoke and Defendants when there is none, and by deliberately trading off of the extensive goodwill that Breeze Smoke has developed and is continuing to develop in its well-known and highly valuable BREEZE marks.

## PARTIES, JURISDICTION AND VENUE

2.     Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 4654 Lilly Ct., West Bloomfield, Michigan 48323.

3.     Upon information and belief, Defendant World Wholesale Inc. is a corporation  organized and existing under the laws of the of the State of Illinois with its principal place of business at 845 North Larch Ave., Suite 3, Elmhurst, IL 60126.

4.     Upon information and belief, Defendant Light View LLC is a limited liability company organized and existing under the State of Illinois with its principal place of business at 845 North Larch Ave., Suite 3, Elmhurst, IL 60126.

2

5.     Upon information and belief, Defendant VICA Trading Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business at 3045 Edinger Ave., Tustin, California 92780.

6.     Upon information and belief, Defendants are in the business of marketing, advertising, promoting, distributing, offering, and selling various goods and services related to electronic cigarettes, including disposable vaping devices.

7.     There is personal jurisdiction over Defendants because the Defendants have engaged in substantial and systematic commercial activities with individuals and entities located in this State, have offered and/or sold goods and services within this State in the ordinary course of trade, and otherwise have constitutionally sufficient contacts with this State so as to make personal jurisdiction proper in this Court.  Personal jurisdiction over Defendants is also appropriate because Defendants supply, distribute, and sell the Infringing Products that are the subject of this action within Michigan and this District.  Moreover, as described further below, Defendants intentionally infringed on intellectual property rights that it knew were owned by Breeze Smoke.  Defendants' actions were expressly aimed at this State and this District, where Breeze Smoke is located, and caused harm in this State and this District that Defendants knew was likely to be suffered in this State and this District.

8.     The Court has subject matter jurisdiction over this civil action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 in that this case arises under

the Lanham Act (15 U.S.C. § 1051, *et seq.*), as well as 28 U.S.C. § 1367, and pursuant to the statutes and common law of the State of Michigan.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(d). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Breeze Smoke's claims occurred in this District as Breeze Smoke and its intellectual property are located in this District and Breeze Smoke offers its BREEZE-branded goods and services in this District.  Defendants expressly aimed their infringing activities at this District, where Breeze Smoke is located and where Defendants knew harm was likely to be suffered.

## BACKGROUND

### *Breeze Smoke's BREEZE Marks*

10.     Breeze Smoke is engaged in the business of manufacturing and selling a variety of tobacco-related and vaping products, including disposable electronic vaping devices, under marks consisting of or containing the term "BREEZE."

11.     Breeze Smoke sells both nicotine and nicotine-free disposable vaping products using its BREEZE marks.

12.     Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers.  Disposable vaping devices are relatively inexpensive and allow consumers to simply throw away the devices when

they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

13.    Breeze Smoke's disposable vaping products are closed-systems meaning that the consumer cannot add other liquids or cartridges to them.  As a result, Breeze Smoke's nicotine-free disposable vaping products are not intended or reasonably expected to be used with or for the consumption of a tobacco product.

14.    For years and since well-prior to Defendants' use, Breeze Smoke has continuously used its BREEZE marks in connection with electronic cigarettes, vaping products, including disposable vaping products and related products in Michigan and throughout the United States.

15.    By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE marks since at least 2014.

16.    Examples showing Breeze Smoke's use of its BREEZE marks are shown below:





17.     In addition to its widespread and continuous use of the BREEZE marks,

Breeze Smoke owns several United States Trademark Registrations for its BREEZE

marks, as set forth on the following chart:

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25:  Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 3 | BR≋ZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 4 | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 5 | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34:  Disposable Electronic Cigarettes |

18.     Copies of the foregoing United States Trademark Registrations and accompanying TSDR records reflecting their current status are attached hereto as **Exhibit A** and incorporated herein by reference.

19.     Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart.

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | than 0.3 percent on a dry weight basis. |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021<br><br>Notice of Allowance Issued: November 1, 2022 | Class 34:   cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRIME | 97/839842 | Filed: March 15, 2023 | Class 34:  Disposable Electronic Cigarettes |
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34:  Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 6 | BR≋ZE | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: | Class 7:  Vacuum packaging machines |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  | November 2, 2020 | Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 8 | BR≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BR⌇⌇ZE | 90/292,579 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | than 0.3% on a dry weight basis<br><br>Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 11 | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34:  Battery performance monitors sold as a component of electronic disposable cigarettes |
| 12 | **BREEZE** —S M O K E— | 97/900,128 | Filed: April 21, 2023 | Class 34:  Disposable electronic cigarettes |
| 13 | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 14 | BREEZE ODOR | 97/010,691 | Filed: September 3, 2021 | Class 4: Candles |
| 15 | BR≋ZE | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 16 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 17 | BR≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 32:  Bottled water |
| 18 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis <br><br> Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis <br><br> Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 19 | BR≋ZE | 90/292,579 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |

Copies of the foregoing applications, along with printouts of the accompanying TESS pages reflecting their status, are attached hereto as **Exhibit B** and incorporated herein by reference.

20.    Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for the mark BREEZE. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

21.    Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

22.    Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

23.     Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

24.     The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.

25.     Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

26.     Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

27.     As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

28.    As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE Marks, and the BREEZE Marks have become intangible assets of substantial commercial value to Breeze Smoke.

### *Defendants' Willful and Infringing Use of the BREEZE Marks*

29.    In August 2023, Breeze Smoke became aware that Defendants had recently begun marketing, promoting, advertising, offering, distributing, and selling disposable vaping products using the mark "BREZE STIIK" (the "Infringing Products").

30.    Examples of the Infringing Products follow:

  





31.   Additional examples displaying Defendants' infringing uses are attached hereto as **Exhibit C** and incorporated herein by reference.

32.    Defendants are directly competing with Breeze Smoke in that they are marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products to the same customers or the same or similar classes of customers as Breeze Smoke under a confusingly similar mark, BREZE STIIK, and using a virtually identical stylization as the BREEZE Marks as seen below:



33.    Breeze Smoke has not licensed or otherwise authorized any Defendant to use its highly valuable and well-established BREEZE Marks in any manner whatsoever.

34.    Upon information and belief, Defendants knew of Breeze Smoke's prior use of the BREEZE Marks and were well aware of the goodwill and market value of Breeze Smoke's BREEZE Marks and intentionally chose to use and to trade off the goodwill associated with the BREEZE Marks to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

35.    Through their unauthorized and infringing uses of the BREEZE Marks,

Defendants are deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in its BREEZE Marks.

36.    Defendants' unauthorized, unlawful, and intentional use of the BREEZE Marks has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of the Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

37.    As a result of Defendants' intentional misappropriation of the BREEZE Marks for use in connection with the Infringing Products, Defendants have caused, and will continue to cause, irreparable injury to Breeze Smoke and have substantially damaged the value of Breeze Smoke's BREEZE Marks.

38.    Defendants have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the Infringing Products.  Among the benefits that Defendants have gained from their unlawful and willful conduct are increased revenues from the sale of the Infringing Products.

39.    In August 2023, Breeze Smoke contacted Defendants by letter to provide Defendants notice of their unlawful infringement and to demand that Defendants cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution

channels.  Copies of these letters are attached hereto as **Exhibit D** and incorporated herein by reference.

40.    To date, Defendants have not ceased selling or offering to sell the Infringing Products and continue to still offer and sell the Infringing Products.

41.    With every day that passes, Defendants' sale of the Infringing Products compounds the irreparable harm to Breeze Smoke.

<u>COUNT I</u>
**FEDERAL TRADEMARK INFRINGEMENT OF A REGISTERED MARK**
**(15 U.S.C. § 1114)**

42.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

43.    Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

44.    Breeze Smoke owns several valid registrations for its BREEZE Marks. Specifically, Breeze Smoke owns federally registered trademark numbers 6,296,004 and 6,296,005 for the mark BREEZE, 6,770,534 for the mark BREEZE PLUS, 6,976,563 for the mark BREEZE SMOKE, and 6,992,438 for the mark BREEZE PRO.

45.    The foregoing registrations are *prima facie* evidence of the validity of

the BREEZE Marks and of Breeze Smoke's ownership of the BREEZE Marks.

46.     Breeze Smoke's use of its BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

47.     Defendants knowingly and intentionally market, promote, advertise, distribute, offer to sell, and sell the Infringing Products.

48.     Defendants are selling and offering to sell the Infringing Products with full knowledge that consumers are likely to confuse them with the BREEZE Goods and Services.

49.     Defendants have been informed and are fully aware of Breeze Smoke's extensive prior use of the BREEZE Marks.

50.     Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks.

51.     Defendants' marketing, promotion, advertising, offering for sale, and selling of Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

52.   Such confusion, deception or mistake has already occurred, and is likely to continue to occur, as a direct result of Defendants' displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

53.   Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.   Though Defendants had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE Marks, they continue to intentionally infringe the BREEZE Marks.

55.   Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

56.   Defendants' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

57.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

58.   Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

59.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

25

## COUNT II
## FEDERAL UNFAIR COMPETITION
## AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

60.     Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

61.     Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells and has possessed such rights at all times material hereto.

62.     Breeze Smoke's use of the BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

63.     Defendants have knowingly and intentionally used and continue to use in commerce the BREEZE Marks in connection with the vaping and tobacco-related goods by advertising, promoting, distributing, and selling the Infringing Products.

64.     Defendants knowingly and intentionally sell the Infringing Products with full knowledge of Breeze Smoke's extensive prior use of the BREEZE Marks.

65.     Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks.

66.     Defendants' marketing, promotion, advertising, distribution, offering for sale, and selling of the Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or

26

Defendants' goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

67.     Such confusion, deception, or mistake has already occurred, and is likely to continue to occur, as a direct result of Defendants' use of the BREEZE Marks in connection with the display, advertising, promotion, offer of sale, and sale of the Infringing Products

68.     Defendants' actions constitute unfair competition, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Though Defendants had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE Marks, they continue to intentionally infringe the BREEZE Marks.

70.     Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

71.     As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

72.     Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

73.     An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT III**
**COMMON LAW UNFAIR COMPETITION**

74.     Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

75.     Defendants were aware of Breeze Smoke's prior use of the BREEZE Marks and used the BREEZE Marks in disregard of Breeze Smoke's rights.

76.     Defendants' actions have resulted in the misappropriation of, and trading upon, Breeze Smoke's valuable goodwill and business reputation at Breeze Smoke's expense and at no expense to Defendants.  The effect of Defendants' misappropriation of the goodwill symbolized by the BREEZE Marks is likely to unjustly enrich Defendants, damage Breeze Smoke, and confuse and/or deceive the public.

77.    Defendants' actions constitute unfair competition with Breeze Smoke, which has caused and will continue to cause irreparable injury to Breeze Smoke's goodwill and reputation unless enjoined.

78.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT IV**
**UNJUST ENRICHMENT**

79.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.    By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE Marks, Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

81.    Defendants are realizing profit and will continue to realize a profit from their improper use of the BREEZE Marks.

82.    Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

83.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

84.    Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

## **PRAYER FOR RELIEF**

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A.     Enter judgment in Breeze Smoke's favor and against Defendants on all counts of the Complaint;

B.     Determine that Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Defendants are liable to Breeze Smoke for such violations;

C.     Determine that Defendants have committed common law trademark infringement, that Breeze Smoke has been damaged by such infringement, and that Defendants are liable to Breeze Smoke for common law trademark infringement;

D.     Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E.     Under all claims for relief, issue a preliminary and permanent injunction enjoining Defendants and any of their officers, employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions:

1.     from using in any manner the BREEZE Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE Marks so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

2.     from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

3.     from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

4.     from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

F.     Order Defendants to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the BREEZE Marks, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that Defendants be ordered to deliver up for destruction all means of making the same;

G.     Order Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.     In accordance with 15 U.S.C. § 1118, order Defendants to deliver to Breeze Smoke, at Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks of Breeze Smoke or which otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

I.     Order that Defendants account for and pay over to Breeze Smoke all gains, profits, and advantages derived from their violation of 15 U.S.C. §§ 1114 and 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

J.     Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Defendants be required to pay over to Breeze Smoke enhanced damages;

K.     Order that Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

L.     Award interest, including pre-judgment interest on the foregoing sums;

M.    Award Breeze Smoke an amount of money to undertake corrective advertising;

N.     Award Breeze Smoke enhanced damages based on Defendants' willful and intentional conduct; and

O.     Grant Breeze Smoke any other relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

Dated:  December 22, 2023           Respectfully submitted,

By:  /s/ Mary A. Hyde
Mary A. Hyde
David J. Roulo
HONIGMAN LLP
155 N. Wacker Drive
Suite 3100
Chicago, IL 60606-1734
Telephone:  312-701-9300
Facsimile:  312-701-9335
mhyde@honigman.com
droulo@honigman.com

Jeffery K. Lamb
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  313-465-7000
Facsimile:  313-465-8000
jlamb@honigman.com
*Attorneys for the Plaintiff*

Amanda Blackburn
HONIGMAN LLP
315 East Eisenhower Parkway
Ann Arbor, MI 48108-3330
Telephone:  734-418-4226
Facsimile:  734-418-4227
ablackburn@honigman.com
*Attorneys for the Plaintiff*